Dear Honorable Shane Pendergrass
You have asked for our opinion on the legality of a policy or practice of the Motor Vehicle Administration ("MVA") not to accept a foreign birth certificate with an apostille as proof of age and identity in connection with an application for a Maryland driver's license or an MVA identification card. You call our attention to the Hague Convention of 1961, to which the United States is a signatory, under which the only formality that may be required to certify the authenticity of certain aspects of a foreign document is the addition of a certificate known as an "apostille," either on the document itself or on an "allonge," issued by the competent authority of the country from which the document emanates.
In our opinion, a proper apostille is conclusive under the Hague Convention with respect to the authenticity of a foreign birth certificate and dispenses with the need for any other form of legalization. However, the Hague Convention does not — and does not purport to — require that the country where a foreign document is produced give that document the same legal effect as a domestic document. Thus, the MVA may not reject a foreign birth certificate with an apostille out of a concern about authenticity. On the other hand, if the MVA has a rational basis other than authenticity for treating such a document differently from a domestic birth certificate, the Hague Convention does not compel the MVA to do otherwise.
 I The Hague Convention
The "Convention Abolishing the Requirement of Legalisation for Foreign Public Documents" treaty, also known as the Hague Convention, provides for a simplified certification of public documents to be used in countries that have joined the convention.
Essentially, the Convention provides that a document that is to be used in a participating country may be certified in the country of origin by an official designated to issue an "apostille." With the "apostille," the document is then entitled to recognition as authentic in the foreign participating country. The Convention was concluded on October 5, 1961, and the United States became a signatory on October 15, 1981. See U.S. State Department website, www.state.gov/m/a/auth/c1267.htm.[1]
The preamble to the Convention expresses the intent of the signatories "to abolish the requirement of diplomatic or consular legalisation for foreign public documents." Article 2 of the Convention explains that "legalisation means only the formality by which the diplomatic or consular agents of the country in which the document has to be produced certify the authenticity of the signature, the capacity in which the person signing the document has acted and, where appropriate, the identity of the seal or stamp which it bears." Likewise, under Article 3 of the Convention, "[t]he only formality that may be required in order to certify the authenticity of the signature, the capacity in which the person signing the document has acted and, where appropriate, the identity of the seal or stamp which it bears, is the addition of the [apostille, a] certificate described in Article 4, issued by the competent authority of the State from which the document emanates."[2]
Article 4 provides that the "apostille" shall be placed on the document itself or on an "allonge" (an attachment to a document when there is insufficient room on the document itself). Article 5 states that a proper apostille "will certify the authenticity of the signature, the capacity in which the person signing the document has acted and, where appropriate, the identity of the seal or stamp which the document bears" and that "[t]he signature, seal and stamp on the certificate are exempt from all certification."
All of the language quoted above makes clear that the Hague Convention deals with simplifying the formalities by which a document is deemed true or authentic. By way of contrast, there is no language in the Convention purporting to mandate the legal effect that must be given to a properly formalized — and thus admittedly authentic — document originating in one signatory country and produced in another. There is no suggestion that, simply because a signatory country must, in light of the presence of a proper apostille, acknowledge the authenticity of a foreign document, a recipient of that document must give it the same legal effect as a similarly authentic domestic document.[3] Thus, a leading 1970 article urging the United States to ratify the Hague Convention posited: "[A]cceptance of the Convention will necessitate no major adjustments on the part of either [the federal or any state] court system, since the probative force of the document, which is not governed by the Convention, will continue to be determined by the law of evidence of the forum" (footnotes omitted). Comment, 11 Harvard International Law Journal 476, 487 (1970).[4] See also Opinion of the Attorney General of California, Opinion No. 81-1213 (March 19, 1982), reproduced at 21 International Legal Materials 357, 362 n. 7.
 II MVA Driver's License and Identification Card Requirements
Section 16-106 of the Transportation Article, Annotated Code of Maryland ("TR") states the requirements for driver's license applications in Maryland. Subsection (e) of that section requires as a general matter that "an applicant for an original license . . . submit with the application a birth certificate or other proof of age and identity that is satisfactory to the [MVA]." Similarly, TR § 12-301(a)(3) requires that an applicant for an MVA identification card "[p]resen[t] a birth certificate or other proof of age and identity acceptable to the [MVA]."
MVA regulations clarify these requirements. Under those regulations, age and identity can generally be proved by presenting a birth certificate or some other "primary source of identification." COMAR11.17.09.04. However, an applicant born in another country who is not already licensed to drive and is applying for an initial license is required to furnish two primary or one primary and two secondary sources of identification satisfying certain further conditions. COMAR11.17.09.04A(7). Regulation .04D lists documents that qualify as "primary sources of identification" and "secondary sources of identification." Among the former is an "[o]riginal government-issued birth certificate or certified copy (U.S. or territorial)." See also 88 Opinions of the Attorney General ___ (2003) [Opinion No. 03-014 (September 12, 2003)]. A birth certificate, whether original or an authenticated copy, issued outside the United States and its territories does not qualify as either a primary or secondary source of identification.
 III Analysis
There is no necessary inconsistency between the provisions of the Hague Convention and a refusal by the MVA to accept a foreign birth certificate with an apostille as evidence of age and identity. On its face, the MVA policy does not challenge the authenticity of a foreign birth certificate or demand some different form of legalization before it will be accepted. While the policy declines to give legal effect for a specific purpose to a foreign document duly authenticated in accordance with the Convention, neither the Convention nor any constitutional or statutory provision requires that the MVA do so. See Jaffe v. Accredited Surety Casualty Co., 294 F.3d 584, 591 (4th Cir. 2002) (foreign judgment not entitled to full faith and credit). That treaty deals only with the formalities necessary to authenticate the document. Of course, to reject a foreign birth certificate accompanied by an apostille as a permissible means of identification, the MVA must have a rational basis other than concerns about the authenticity of the document.[5]
 IV Conclusion
There is a difference between the recognition of a document as authentic and the legal effect given to a document. Under the Hague Convention, the authenticity of a foreign birth certificate with an apostille is established in Maryland, as well as the rest of the United States. Thus, the MVA may not reject the use of such a document out of concern for its authenticity. However, the Hague Convention does not determine the use or legal effect of a foreign birth certificate, even if properly authenticated, for purposes of Maryland law governing the issuance of driver's licenses and identification cards.
 J. Joseph Curran, Jr. Attorney General
 Judith A. Armold Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] An English version of the text of the Hague Convention appears on the Internet at www.hcch.net/e/conventions/text12e.html. The Convention was originally drafted in French, and presented to the signatories in both French and English, with the understanding that the French text prevails in case of divergence.
[2] Article 3 provides an exception "when either the laws, regulations, or practice in force in the State where the document is produced or an agreement between two or more Contracting States have abolished or simplified [the apostille formality], or exempt the document itself from legalisation."
[3] Article IV, § 1 of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State," but there is no similar requirement that a state give full faith and credit to public documents of a foreign country. The procedure for authenticating public documents of another state is governed by 28 U.S.C. § 1738-39. 
[4] For the proposition that the Hague Convention does not govern the probative force of a document, see footnote 66 of the article, citing 2 Actes et Documents de la Neuvieme Session de la Conference de La Haye de droit international prive (1960) 161, 181-82.
[5] Concerns about the MVA policy on the use of foreign birth certificates as evidence of age and identity may be appropriately considered by the Task Force on Licensing Documentation for Driver Licenses. *Page 66